**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **Adriane Sack, *on behalf of herself and all others similarly situated*,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:26-cv-2838** |
| | § | |
| **BODYWELL USA, INC.,** | § | |
| | § | |
| **Defendant.** | § | |

**PLAINTIFF'S ORIIGNAL CLASS ACTION COMPLAINT**

1. Electromagnetic fields ("EMFs") are all around us in daily life. Natural sources of EMFs include the Earth's magnetic field and the Sun, while man-made sources include power lines, electrical wiring, cell phones, radios, TVs, computers, and other electronic equipment. The expansion of daily cell phone use and wireless technology has prompted regulators, the scientific community, and the general public to devote increased attention to the potential health effects of increased EMF exposure.[1]

2. This case is not about whether cell phone use is harmful. This case is about Defendant defrauding its "250,000+ customers" by selling its $99.99 BioChip based on the foundational representation that the BioChip provides "EMF protection." Contrary to the sole stated purpose of the BioChip, it provides *no EMF protection at all*. Plaintiff brings this class action to put an end to Bodywell's fraud.

[1] *See, e.g.*, *Envtl. Health Tr. v. Fed. Communications Comm'n*, 9 F.4th 893, 900 (D.C. Cir. 2021) (providing background on radio waves and the FCC's regulation regarding the same); *see also* https://www.fda.gov/radiation-emitting-products/home-business-and-entertainment-products/cell-phones.

## THE PARTIES

3. Plaintiff Adriane Sack is an individual who resides and is domiciled in Dallas, Texas.

4. Defendant Bodywell USA, Inc. is a corporation incorporated in Florida, with its principal place of business in Cooper City, Florida. Accordingly, Defendant is a citizen of Florida.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed Class is a citizen of a State different from Defendant. Plaintiff is a citizen of Texas, while Defendant is a citizen of Florida.

6. The Court has personal jurisdiction over Defendant because the claims alleged herein arise from or relate to Defendant's actions in Texas. By conducting business in Texas, including selling its products to Plaintiff and thousands of consumers in Texas, Defendant purposefully availed itself of the privilege of doing business in this State.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial part of Defendant's conduct giving rise to the claims occurred in this District, including Defendant selling its product to Plaintiff in this District.

## FACTUAL ALLEGATIONS

8. Defendant Bodwell USA, Inc. ("Bodywell") is a highly successful Florida company that sells "EMF protection" products. Bodywell's flagship product is its BioChip:







9. Bodywell is not shy about its claims, and does not rely on innuendo or vague statements of health or healing. Bodywell specifically and repeatedly represents to its potential customers that its BioChip *provides EMF protection* to the

user. That is the entire sales pitch; providing EMF protection is the *only thing* that the BioChip purportedly does. For example, Bodywell states that:

- the BioChip "instantly reduces the amount of radiation your body absorbs from your device by up to 80%";
- users can expect "Significant reduction in radiation exposure (up to 80%)"; and
- users can "Continue using your devices normally and enjoy 24/7 protection from harmful EMF radiation."

10. Bodywell sells its products direct to consumers via its website. *See generally* bodywell.com:












**Advanced EMF Protection For Phones , Tablets, Laptops, and more**

11. Bodywell's entire sales pitch—that its devices provide EMF protection—is false. The BioChip does not provide any "EMF protection" whatsoever.

12. In truth, the BioChip is simply a small, thin piece of aluminum (approximately one-inch-by-one-inch, and thinner than a credit card). That's it.

13. Buried deep within Bodywell's website, Bodywell itself admits that the BioChip is simply a thin piece of aluminum: "the Bodywell chip is made of ***a homogenous aluminum material without any electronic circuitry***." *See* "State of the art: Bodywell BioChip" (which contains the signature block for "Nachaat Mazeh, PhD" but no signature).[2]

14. Thus, the BioChip is not a "chip" in any sense, and certainly not in any computer-related or electronic sense as the name implies. Calling it a "chip" or an "external mini-card" is false and intentionally deceitful.

15. Moreover, the yellow/gold colored plating on the BioChip that *imitates* the look of a computer chip is just a decoration. It serves no purpose other than to further the deceit:




16. Beyond the fact that sticking a thin square of aluminum to a cell phone would not be expected to affect the cell phone's ability to emit and receive radio waves,

[2] This page of Bodywell's website, "State of the art: Bodywell BioChip," was available for years at www.bodywell.com/pages/state-of-the-art-bodywell-chip. Bodywell apparently *removed* it from its website after receiving Plaintiff's June 24, 2026 statutory pre-suit notice letter.

there is a simple test to confirm: does the cell phone work the same way before and after the BioChip is applied (i.e., does attaching the Biochip make any difference in the phone's ability to send and receive data via radio waves)?

17. Unsurprisingly, sticking the BioChip to the user's cell phone makes no difference; the phone continues to send or receive information via radio waves the same as before.[3]

18. Of course, Bodywell knows this. In fact, Bodywell attempts to insulate itself from fraud claims via the fine print of its website. Buried in the Frequently Asked Questions section of its website, Bodywell finally admits that "***Bodywell products don't block or shield EMF***."

19. Given this startling admission, how is it that Bodywell still sells its products on the foundational claim that they provide *EMF protection* to the user? The answer is fraud.

20. Of course, Bodywell gives a different answer. In an creative attempt to bridge the impossible gap from the admission ("Bodywell products don't block or shield EMF") to the foundational sales pitch (Bodywell products provide "EMF protection"), Bodywell makes ***a most extraordinary claim****:* that the BioChip, when stuck to the user's cell phone, doesn't provide EMF protection to the user by interacting ***with the cell phone*** or the EMFs emitted; instead, the BioChip on the

[3] Products that actually *do* provide cell phone EMF protection exist, such as Faraday bags. Such devices work by encasing the phone in a material that is impenetrable by radio waves. But those products have limited application for the everyday cell phone user, as most users *do* want their cell phone to be able to make calls, send texts, or connect to the internet (all via radio waves).

cell phone somehow provides EMF protection to the user by interacting ***with the user's body***:

> **How Does Bodywell® Work?**
>
> Bodywell® products don't block or shield EMF; instead, they interact with the body to mitigate the biological effects of electromagnetic radiation (EMR). The technology introduces a consistent, recognizable pattern to your body, reducing the stress and imbalance caused by chaotic EMR waves.

21. Thus, Bodywell contends that its foundational claim of "EMF protection" is still true, despite all of the above facts and admissions, because (according to Bodywell) when a user sticks the BioChip to the user's cell phone, the BioChip does something ***to the user's body*** rather than ***to the cell phone*** or the radio waves the cell phone emits**.**

22. This contention is false. As a matter empirical fact, the BioChip does *not* interact with the with the user's body to provide the user with EMF protection.

23. The closest Bodywell comes to providing any explanation for how the Biochip purportedly interacts ***with the user's body*** to provide EMF protection is in the "State of the art: Bodywell BioChip" document that appeared (until very recently) on Bodywell's website (https://bodywell.com/pages/state-of-the-art-bodywell-chip). But even there, the author of the unsigned document ("Nachaat Mazeh, PhD") actually admits that he ***has no idea how the BioChip is supposed to work.*** Specifically, he states that "the science that explains its functions is not fully

understood." Nevertheless, he posits that the aluminum BioChip is a discovery that will shake the foundations of physics: "I can confirm that initial observations indicate either a new scientific breakthrough, an unknown property of the electron, or a completely new waveform."

24. And while he states that "we continue to investigate this new device and the science behind it," the document is not dated, and no follow-up is disclosed. Bodywell discloses no patents, nor any awards or recognition in the scientific community for any "new scientific breakthrough" related to the BioChip, such as the discovery of a previously "unknown property of the electron" or "completely new waveform" (which would likely earn Bodywell a Nobel Prize in physics).

25. Of course, the truth is much simpler, and no new understanding of physics is needed: the BioChip provides *no EMF protection to the user*.

**The Named Plaintiff's Purchase**

26. After seeing Bodywell's Instagram ads in December 2024, and based on the representation that the BioChip would provide her with EMF protection, Plaintiff purchased a three-pack of Bodywell's BioChips on December 2, 2024, on sale for $179.41.

27. On June 24, 2026, Plaintiff sent the pre-suit notice letter to Bodywell as required by TEX. BUS. & COM. CODE § 17.505, on behalf of herself and a class of all Bodywell customers. As required by TEX. BUS. & COM. CODE § 17.501, a copy of that letter was also sent to the Texas Attorney General, Consumer Protection Division.

## THE PROPOSED CLASSES

28. Plaintiff brings this action individually and on behalf of two proposed Classes:

- a "Nationwide Fraud Class" comprising all persons who purchased a device from Bodywell in the United States; and
- a "Texas DTPA Class" comprising all persons who purchased a device from Bodywell in Texas.[4]

## CAUSES OF ACTION

## COUNT I: Common Law Fraud

29. Plaintiff incorporates and realleges each of the facts alleged above, as if set forth fully herein.

30. Plaintiff brings this claim individually and on behalf of the Nationwide Fraud Class.

31. Defendant specifically represented to Plaintiff and the members of the proposed Nationwide Fraud Class that its products, including the BioChip, provide the user with EMF protection. Indeed, EMF protection is the only claimed use or benefit for Defendant's products. Defendant's representation of EMF protection is

[4] Excluded from both classes are (i) Defendant; (ii) all present and former officers, directors, or control persons of Defendant; (iii) the present and former parents, subsidiaries, assigns, successors, predecessors, and affiliates of any Defendant; (iv) any Judge or Magistrate Judge presiding over this action and the members of their immediate family; (v) counsel for any party to this action, and any experts or consultants retained by counsel in this action; (vi) any entity in which any person excluded under subsections (i)-(iii) has or had a material ownership interest; (vii) and any excluded person's legal representatives, heirs, successors, predecessors, or assigns. Excluded from the Texas DTPA Class only are legal entities with assets of $25 million or more.

made consistently and repeatedly by Defendant in its all of its marketing, including on its website.

32. Defendant's representation that its products provide EMF protection is false.

33. Defendant made the representation that its products provide the user with EMF protection, consistently and repeatedly, with full knowledge that the representation is false, and with intent to deceive Plaintiff and the members of the proposed Nationwide Fraud Class.

34. Plaintiff relied on the representation that Defendant's BioChip would provide her with EMF protection, and based upon that representation, purchased three BioChips from Defendant in December 2024. The members of the proposed Nationwide Fraud Class likewise relied on Defendant's representation that its products would provide users with EMF protection, and based on that representation, made their purchases from Defendant.

35. If Defendant had not represented that its products provide EMF protection to the user, neither Plaintiff nor any of the members of the proposed Nationwide Fraud Class would have purchased Defendant's products. Indeed, there is no other stated purpose of Defendant's products other than to purportedly provide EMF protection.

36. As a result of such false representation and reliance, Plaintiff and the members of the proposed Nationwide Fraud Class suffered economic damages. Because Defendant's products do not actually provide EMF protection, Plaintiff

purchased three worthless pieces of aluminum from Defendant for $179.41. The members of the proposed Nationwide Fraud Class likewise purchased worthless pieces of aluminum from Defendant. Accordingly, Plaintiff and the members of the proposed Nationwide Fraud Class suffered out-of-pocket economic damages calculated as the purchase price paid to Defendant ($179.41 for Plaintiff), less the actual value received ($0). Plaintiff and the members of the proposed Nationwide Fraud Class also suffered economic damages in the form of the loss of use of the money they spent on Defendant's products.

37. Plaintiff, on behalf of herself and the proposed Nationwide Fraud Class, seeks recovery of economic damages for the purchase price and loss of use of funds, as well as punitive damages, and reasonable attorney's fees under the common fund doctrine.

**COUNT II: Claim Under Texas DTPA § 17.50(a)(1) (Laundry List Violation)**

38. Plaintiff incorporates and realleges each of the facts alleged above, as if set forth fully herein.

39. Plaintiff brings this claim individually and on behalf of the proposed Texas DTPA Class.

40. Plaintiff is an individual, a "consumer" as defined in TEX. BUS. & COM. CODE § 17.45(4). The members of the proposed Texas DTPA Class are also individuals, or other legal entities with assets of $25 million or less, and are therefore "consumers" under § 17.45(4).

41. Defendant's BioChip, BioCard, BioPods, and BioBand are "goods" under TEX. BUS. & COM. CODE § 17.45(1), because they are "tangible chattels."

42. Defendant engaged in a false, misleading, and deceptive act or practice that is specifically enumerated in TEX. BUS. & COM. CODE § 17.46(b)(5): "representing that goods … have … uses, [or] benefits … which they do not have." Specifically, Defendant represented that its products, including the BioChip, have a use and benefit of providing the user with EMF protection. Indeed, that is the *only* claimed use or benefit for Defendant's products.

43. Defendants products do not have that use or benefit; they do not provide the user with EMF protection.

44. Plaintiff relied on the representation that Defendant's BioChip would provide her with EMF protection, and based upon that representation, purchased three BioChips from Defendant in December 2024. The members of the proposed Texas DTPA Class likewise relied on the representations that Defendant's products would provide them with EMF protection in making their purchases. Indeed, there is *no other reason* that Plaintiff or any member of the proposed Texas DTPA Class would purchase a product from Defendant other than relying on Defendant's representation that the device would provide the user with EMF protection. That is the *entire stated purpose* of Defendant's products, including the BioChip.

45. Defendant's violation of § 17.46(b)(5) was a producing cause of economic damages to Plaintiff and the members of the proposed Texas DTPA Class. As noted above, Plaintiff and the members of the proposed Texas DTPA Class purchased Defendant's products based on the foundational representation that Defendant's products provide the user with EMF protection. If Defendant had not represented

that its products provide EMF protection to the user, neither Plaintiff nor any of the members of the proposed Texas DTPA Class would have purchased them.

46. Because Defendant's products do not actually provide EMF protection, Plaintiff purchased three worthless pieces of aluminum from Defendant for $179.41. The members of the proposed Texas DTPA Class likewise purchased worthless pieces of aluminum from Defendant. Accordingly, Plaintiff and the members of the proposed Texas DTPA Class suffered out-of-pocket economic damages calculated as the purchase price paid to Defendant ($179.41 for Plaintiff), less the actual value received ($0). Plaintiff and the members of the proposed Texas DTPA Class also suffered economic damages in the form of the loss of use of the money they spent on Defendant's products.

47. Defendant's acts in violation of § 17.46(b)(5) were done knowingly, in that Defendant knew that its products do not provide EMF protection when representing that they do. Accordingly, Plaintiff and members of the proposed Texas DTPA Class are entitled to treble damages under § 17.50(b)(1).

48. Plaintiff, on behalf of herself and the proposed Texas DTPA Class, also seeks injunctive relief as authorized by § 17.50(b)(2), in the form of an order enjoining Defendant from representing to consumers that its products provide EMF protection.

49. Plaintiff, on behalf of herself and the proposed Texas DTPA Class, also seeks recovery of reasonable and necessary attorney's fees under § 17.50(d) and the common fund doctrine.

**COUNT III: Claim Under Texas DTPA § 17.50(a)(2) (Express Warranty)**

50. Plaintiff incorporates and realleges each of the facts alleged above, as if set forth fully herein.

51. Plaintiff brings this claim individually and on behalf of the proposed Texas DTPA Class.

52. Plaintiff is an individual, a "consumer" as defined in TEX. BUS. & COM. CODE § 17.45(4). The members of the proposed Texas DTPA Class are also individuals, or other legal entities with assists of $25 million or less, and are therefore "consumers" under § 17.45(4).

53. Defendant continually makes the affirmation of fact that its products, including the BioChip, provide EMF protection to the user. This is an express warranty.

54. Defendant has breached this express warranty with respect to all of its products, including the BioChip, because they do not provide EMF protection to the user.

55. Defendant's breach of this express warranty was a producing cause of economic damages to Plaintiff and the members of the proposed Texas DTPA Class. It is this express warranty that (purportedly) gives Defendant's products any value at all. Because Defendant breached the express warranty of EMF protection, its products have diminished value. Plaintiff now owns three small pieces of aluminum that do nothing. Similarly, the members of the proposed Texas DTPA Class own small pieces of aluminum that do nothing. Plaintiff and the members of the proposed Texas DTPA Class suffered economic damages calculated as the difference between

the value of the goods accepted ($0) and the value they would have had if they had been as warranted (the purchase price, $179.41 for Plaintiff). Plaintiff and the members of the proposed Texas DTPA Class also suffered economic damages in the form of the loss of use of the money they spent on Defendant's products.

56. Defendant's conduct in breaching the express warranty was done knowingly, in that Defendant knew that its products do not provide EMF protection to the user. Accordingly, Plaintiff and members of the proposed Texas DTPA Class are entitled to treble damages under § 17.50(b)(1).

57. Plaintiff, on behalf of herself and the proposed Texas DTPA Class, also seeks injunctive relief as authorized by § 17.50(b)(2) in the form of an order enjoining Defendant from warranting to consumers that its products provide EMF protection.

58. Plaintiff, on behalf of herself and the proposed Texas DTPA Class, also seeks recovery of reasonable and necessary attorney's fees under § 17.50(d) and the common fund doctrine.

**COUNT IV: Claim Under Texas DTPA § 17.50(a)(3) (Unconscionability)**

59. Plaintiff incorporates and realleges each of the facts alleged above, as if set forth fully herein.

60. Plaintiff brings this claim individually and on behalf of the proposed Texas DTPA Class.

61. Plaintiff is an individual, a "consumer" as defined in TEX. BUS. & COM. CODE § 17.45(4). The members of the proposed Texas DTPA Class are also individuals, or other legal entities with assests of $25 million or less, and are therefore "consumers" under § 17.45(4).

62. Defendant is a corporation, and therefore a "person" as that term is used in § 17.50(3). *See* TEX. BUS. & COM. CODE § 17.45(3).

63. Defendant engaged in an unconscionable course of action in selling its products based on the foundational misrepresentation that the products provide EMF protection to the user, when the products to not actually provide EMF protection to the user. In this way, Defendant took advantage of Plaintiff's and the members of the proposed Texas DTPA Class's lack of knowledge regarding EMF protection to a grossly unfair degree.

64. Defendant's unconscionable course of action was a producing cause of economic damages to Plaintiff and members of the proposed Texas DTPA Class. As noted above, Plaintiff and the members of the proposed Texas DTPA Class purchased Defendant's products based on the foundational misrepresentation that Defendant's products provide EMF protection to the user. There is no other reason for anyone to purchase one of Defendant's products. If Defendant had not taken advantage of Plaintiff or the members of the proposed Texas DTPA Class's lack of knowledge regarding EMF protection in this way, neither Plaintiff nor any members of the proposed Texas DTPA Class would have purchased Defendant's products.

65. As a result of Defendant's unconscionable course of action, Plaintiff purchased three small pieces of aluminum that do nothing from Defendant for $179.41, and the members of the proposed Texas DTPA Class likewise purchased pieces of aluminum from Defendant that do nothing. Accordingly, Plaintiff and the members of the proposed Texas DTPA Class suffered out-of-pocket economic damages

calculated as the purchase price paid to Defendant ($179.41 for Plaintiff), less the actual value received ($0). Plaintiff and the members of the proposed Texas DTPA Class also suffered economic damages in the form of the loss of use of the money they spent on Defendant's products.

66. Defendant's unconscionable course of action was done knowingly, in that Defendant knew that its products do not provide EMF protection. Accordingly, Plaintiff and members of the proposed Texas DTPA Class are entitled to treble damages under § 17.50(b)(1).

67. Plaintiff, on behalf of herself and the proposed Texas DTPA Class, also seeks injunctive relief as authorized by § 17.50(b)(2) in the form of an order enjoining Defendant from representing to consumers that its products provide EMF protection.

68. Plaintiff, on behalf of herself and the proposed Texas DTPA Class, also seeks recovery of reasonable and necessary attorney's fees under § 17.50(d) and the common fund doctrine.

## CLASS ACTION ALLEGATIONS

69. Plaintiff brings this action under Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf of the proposed Nationwide Fraud Class and the proposed Texas DTPA Class.

70. The following people are excluded from both classes: (i) Defendant; (ii) all present and former officers, directors, or control persons of Defendant; (iii) the present and former parents, subsidiaries, assigns, successors, predecessors, and affiliates of any Defendant; (iv) any Judge or Magistrate Judge presiding over this

action and the members of their immediate family; (v) counsel for any party to this action, and any experts or consultants retained by counsel in this action; (vi) any entity in which any person excluded under subsections (i)-(iii) has or had a material ownership interest; and (vii) any excluded person's legal representatives, heirs, successors, predecessors, or assigns. Excluded from the Texas DTPA Class only are legal entities with assets of $25 million or more.

71. Each proposed Class is so numerous that joinder is impractical. On information and belief, there are at least tens (if not hundreds) of thousands of members of the proposed Nationwide Fraud Class, and thousands or tens of thousands of members of the proposed Texas DTPA Class. This beleif is based on the Bodywell's statement that it has over 250,000 customers.

72. There are questions of law and fact common to each proposed Class. Each proposed class member was harmed by Defendant's common scheme, in the same way as Plaintiff. Indeed, there are only two main issues of fact in this case, and they are common to the members of both proposed Classes:

- Whether Defendant's products provide EMF protection; and
- Whether Defendant knowingly misrepresented that its products provide EMF protection.

73. Plaintiff's claims are typical of the claims of both proposed Classes. Like the other members of both proposed Classes, Plaintiff purchased Defendant's product based on the foundational representation that they provide EMF protection, and suffered damages because Defendant's product does not provide EMF protection.

74. Prosecuting separate individual actions would be an inefficient use of judicial resources and could result in inconsistent outcomes and inconsistent standards for Defendant.

75. This action is appropriately brought as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure. Common questions of law and fact predominate over any individual questions. For example, the two core questions of fact listed above are shared among all members of both proposed Classes, and predominate over individualized issues.

76. A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because the individual litigation of each claim is impractical. It would be unduly burdensome to litigate tens or hundreds of thousands of individual claims in separate lawsuits, every one of which presents exactly the same issues present here.

77. For almost all members of both proposed Classes, pursuing an individual action is not financially feasible in light of the relatively small amount of their potential damages, meaning they would be denied any relief without a class action. Concentrating the claims of all Class members in a single forum will conserve judicial resources and is unlikely to present difficulties in managing the action, considering a single course of conduct by Defendant affected all Class members in the same way.

78. The identity of the members of both proposed Classes can be reasonably ascertained from Defendant's records.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself, the Nationwide Fraud Class, and the Texas DTPA Class, prays for judgment and relief against Defendant as follows:

A. Determining that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as a class representative and Plaintiff's counsel as class counsel;

B. Awarding damages in favor of Plaintiff, the Nationwide Fraud Class, and the Texas DTPA Class against Defendant, for all damages sustained as a result of Defendant's wrongdoing, in an amount to be proven at trial, including interest thereon,

C. Awarding treble damages in favor of Plaintiff and the Texas DTPA Class;

D. Granting injunctive relief to Plaintiff and the Texas DTPA Class as authorized by § 17.50(b)(2);

E. Awarding reasonable costs and expenses incurred in this action, including attorneys' fees, expert fees, and other costs; and

F. Awarding Plaintiff and the Class such other and further relief as this Court may deem just and proper.

Dated: August 24, 2026.

Respectfully Submitted,

/s/ Grayson L. Linyard
Grayson L. Linyard
Texas Bar No. 24070150
**LINYARD PLLC**
6744 Avalon Ave.
Dallas, TX 75214
Telephone: (214) 415-0580
Email: gray@linyardpllc.com

*Counsel for Plaintiff and the Proposed Classes*